**SECOND DIVISION**
**MERCIER, C. J.,**
**MILLER, P. J., and HODGES, J.**

**NOTICE: Motions for reconsideration must be**
***physically received*** **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**October 18, 2023**

# In the Court of Appeals of Georgia

A23A0798. DEKALB COUNTY et al v. CITY OF CHAMBLEE.

MERCIER, Chief Judge.

The City of Chamblee filed the underlying lawsuit against DeKalb County and various County officials, alleging that the County failed to properly assess and tax certain leasehold interests at DeKalb-Peachtree Airport (known as "PDK"), which is owned by the County and located within both the City and the County, and that the County failed to pay occupancy taxes. The County filed a motion to dismiss, which the trial court denied in part.[1] Thereafter, the County filed this appeal,[2] arguing that

---

[1] In its order, the trial court held that the City's request for an interlocutory injunction was moot, as was the City's Open Records Act request, and it dismissed the City's mandamus claim. The City does not challenge the trial court's rulings on these particular issues in this appeal.

[2] The County obtained a certificate of immediate review from the trial court and then filed an application for interlocutory appeal, which we granted. See A23I0096.

the trial court erred because the City's declaratory judgment action failed to state a claim, that the City's claim for damages lacks statutory support, that the City failed to state a claim for occupancy taxes, and that the City's attorney fees claim should be dismissed. We reverse the trial court's order denying the motion to dismiss the City's declaratory judgment action and the City's claim for damages and the appointment of an auditor. However, as the trial court reserved ruling on the City's claim for attorney fees, there is nothing for this Court to review.

We review a trial court's grant or denial of a motion to dismiss de novo. See *GeorgiaCarry.Org v. Atlanta Botanical Garden*, 299 Ga. 26, 28 (1) (785 SE2d 874) (2016). "In deciding a motion to dismiss, all pleadings are to be construed most favorably to the party who filed them, and all doubts regarding such pleadings must be resolved in the filing party's favor." Id. (citation and punctuation omitted). So viewed, the pleadings state the following. The County provides aviation services through fixed-base operators and leases commercial building space at PDK. The City alleges that the County's Board of Assessors failed to assess and tax certain leasehold interests at PDK, contrary to the requirements of OCGA § 6-3-25 (4) (A),[3] which

_____

[3] OCGA § 6-3-25 (4) (A) provides relevantly that a county or other political subdivision which establishes an airport is authorized to "[l]ease portions of such property lying within any county having a population of 550,000 or more persons

2

prohibits the granting of non-taxable usufructs in airport property or improvements within a county that has a population of 550,000 or more according to the census.[4] In essence, the City argues that the County's Board of Assessors failed to comply with its statutory duty to "investigate diligently and to inquire into the property owned in the county for the purpose of ascertaining what real and personal property is subject to taxation in the county and to require the proper return of the property for taxation," pursuant to OCGA § 48-5-299 (a). Moreover, the City claims that the County conducts proprietary business activities at PDK, but fails to pay occupancy taxes to the City.

In 2018, the City approached the County's Board of Assessors to discuss its claims that the County was failing to adequately assess taxes at PDK. However, the

---

according to the United States decennial census of 1980 or any future such census for an initial term of up to 50 years, and to extend such leases, to private parties for development of such property for hotels and related facilities, conference centers, office buildings, commercial and retail uses, and other similar airport and travel related purposes, provided that: . . . [a] lease under this paragraph shall expressly grant and convey to the lessee a taxable estate for years in both the property and any improvements upon such property as may be constructed and shall not grant or convey a nontaxable usufruct in either the property or the improvements upon such property[.]"

[4] The County's population exceeded 550,000 people in 2000.

3

County responded by stating that its interpretation of OCGA § 6-3-25 (4) (A) differed from that of the City, and that the leases were not taxable.

When the parties could not resolve their dispute, the City filed the underlying lawsuit against the County, the County's Board of Commissioners, its members in their official capacities, the County's Tax Commissioner, the County's Board of Assessors and its members in their official capacities. The County filed this appeal following the trial court's denial in part of its motion to dismiss.

1. The County contends that the trial court erred by failing to dismiss the City's declaratory judgment action due to its failure to state a claim. Specifically, the County argues that the City's action fails because the City is not in a position of uncertainty. We agree and find that the City faces no uncertainty as to any of its *own* future conduct, and instead only seeks an adjudication of issues that will impact the future conduct of the County.

Superior courts in Georgia have the power to declare the rights and other legal relations of any interested party in "cases of actual controversy" pursuant to OCGA § 9-4-2 (a) and "in any civil case in which it appears to the court that the ends of justice require that the declaration should be made" pursuant to OCGA § 9-4-2 (b). "Cities, like other litigants, are entitled to avail themselves of declaratory relief under

4

OCGA § 9-4-2." *City of Atlanta v. Hotels.com*, 285 Ga. 231, 234 (674 SE2d 898) (2009). This relief is authorized when there is "a necessity for a determination of the dispute to guide and protect the plaintiff from uncertainty and insecurity with regard to the propriety of some future act or conduct, which is properly incident to his alleged rights and which if taken without direction might reasonably jeopardize his interest." *GeorgiaCarry.org*, 299 Ga. at 28 (1) (citation and punctuation omitted). Moreover, the Declaratory Judgment Act is to be "liberally construed and administered." *City of Atlanta*, 285 Ga. at 234 (citation and punctuation omitted). "Thus, to state a claim for declaratory judgment, a party need only allege the existence of a justiciable controversy in which future conduct depends on resolution of uncertain legal relations." Id.

Here, the City requests that the court determine whether OCGA § 6-3-25 (4) (a) requires that PDK property leases be treated as taxable estates. The City argues that it would receive tax revenue from the taxable estates, if the County collected the revenue. However, the County argues that the City has no uncertainty because the City "has no role in the assessment of property." The County is correct. The City faces no uncertainty regarding its future behavior. A declaratory judgment action may only be used to

5

adjudge those rights among parties upon which their future conduct depends. Such relief is authorized when there are circumstances showing a necessity for a determination of the dispute to guide and protect the plaintiff from uncertainty and insecurity with regard to the propriety of some future act or conduct, which is properly incident to his alleged rights and which if taken without direction might reasonably jeopardize his interest.

*Love v. Fulton County Bd. of Tax Assessors*, 311 Ga. 682, 696 (3) (c) (859 SE2d 33) (2021) (citation and punctuation omitted). Here, the City "faces no uncertainty or insecurity as to any of its *own* future conduct, but rather seeks an adjudication only of issues that will impact the future conduct of the [County]." *SJN Properties v. Fulton County Bd. of Assessors*, 296 Ga. 793, 803 (2) (b) (iii) (770 SE2d 832) (2015) (emphasis in original). As the City merely seeks to determine the propriety of the County's actions, and not of its own, the City cannot maintain a declaratory judgment action. See id. (where the plaintiff faced no uncertainty as to any of its own future conduct, but only sought an adjudication of issues impacting the future conduct of a board of tax assessors, its claim for declaratory relief could not be maintained); *Gwinnett County v. Netflix*, 367 Ga. App. 138, 146 (2) (885 SE2d 177) (2023) ("It is well settled that declaratory judgment is not available where a judgment *cannot guide and protect the petitioner* with regard to some future act.") (citation and punctuation

6

omitted, emphasis supplied); compare *City of Atlanta*, 285 Ga. at 235 (The city properly stated a claim for declaratory judgment when it faced uncertainty on whether it was authorized to demand access to taxpayers books in order to estimate and access taxes due under the hotel tax ordinance.). As such, the trial court erred by denying the County's motion to dismiss the City's claim for declaratory judgment.

2. The County argues that the City failed to state a claim for past taxes, dating back to 2000, and therefore the City's claim fails as a matter of law and the trial court should have denied their request for an auditor. Specifically, the County argues that the City failed to point to a statute that authorized its action for damages. We agree.

"[T]he power to levy and collect taxes is so great," and, as such, "that power may only be exercised as permitted by statutes enacted by the legislative branch." *Bellsouth Telecommunications v. Cobb County*, 305 Ga. 144, 151 (2) (824 SE2d 233) (2019); see also Ga. Const. of 1983, Art. VII, Sec. I, Par. III (a) ("All taxes shall be levied and collected under general laws and for public purposes only."). "This structural requirement that both the levy and collection of taxes be done as prescribed by the legislature — like many other structural provisions of our Constitution — preserves liberty because legislators are accountable to the people more directly than bureaucrats or judges." *Bellsouth Telecommunications*, 305 Ga. at 151 (2). Because

legislators are more directly accountable to the people of Georgia, "the matter of collecting taxes, in the absence of statutory provision therefor, is beyond the jurisdiction of the judicial branch." Id. (citation and punctuation omitted). Put another way, "[t]axes cannot be collected through a court action absent some specific legislative provision authorizing such an action." Id. "This rule applies to counties, as a county is a mere political division of the State[.]" Id. at 152 (2) (citation and punctuation omitted).

The City fails to point to any statutory provision authorizing its lawsuit against the County for damages resulting from the County's alleged failure to assess ad valorem taxes at PDK. And absent a statute specifically authorizing the lawsuit, any such action would violate the separation of powers doctrine.

> A most distinctive feature of the constitution of the United States and of this State is the division of the powers of government into three separate departments—executive, legislative, and judicial. It was designed and intended that one department should not usurp the ordinary functions of the others, but that all three should act in harmonious relation. So, when the legislature authorizes a tax for governmental purposes and provides an adequate remedy for its collection by administrative officers, the necessary intendment is that the collection of the tax is exclusively confided to that administrative department of the government.

8

*Bellsouth Telecommunications*, 305 Ga. at 152 (2) (citation and punctuation omitted); see also *Perkins v. Dept. of Med. Assistance*, 252 Ga. App. 35, 36 (1) (555 SE2d 500) (2001) ("It must be remembered that the constitutional separation of powers between the executive branch and the judicial branch prevents courts from involvement in review of administrative decisions unless there exists specific legislative empowerment for the judiciary to act regarding executive branch functions[.]"). Further, it matters not that the City is not attempting to levy taxes on a taxpayer, but merely trying to compel the County to collect the funds. See *Bellsouth Telecommunications*, 305 Ga. at 152 (2). Here, the City has failed to show any statute that supports their cause of action. Compare OCGA § 48-8-35 (providing that any dealer who fails or refuses to collect sales and use tax "shall be liable for and shall pay the tax himself"). As such, their claim for collection of past taxes, and for appointment of an auditor, must fail. See generally *Bellsouth Telecommunications*, 305 Ga. at 155 (2).

3. The County contends that it is not subject to occupancy taxes under the City Code for its revenue-generating activities at PDK because under OCGA § 6-3-21, its operation of the airport qualifies as a governmental function, not a business. We agree.

9

The City claims that the County is liable for occupancy taxes for its business activity at PDK under Chamblee City Code § 22-1, which provides pertinently that "[e]ach person engaged in a business, trade, profession or occupation . . . with a location within the city . . . shall pay an occupational tax for said business, trade, profession or occupation." See OCGA § 48-13-6 (b) (authorizing the governing authority of each municipal corporation to provide by local ordinance for the levy, assessment and collection of occupational taxes for certain businesses). The term "business" is defined as "any person, sole proprietor, partnership, corporation, trade, profession, occupation or other entity and the efforts or activities associated thereby for the purposes of raising revenue or producing income." Chamblee City Code § 22-2 (b). Unless exempted, all persons, firms, companies, corporations, and other entities operating a business within the city are "required to register their business or office, obtain an occupation tax certificate for their business or office," and pay required taxes and fees. See Chamblee City Code § 22-3 (a). Section 22-16 further provides that

> [o]rganizations which are exempt from federal income taxation under the United States Internal Revenue Code shall be eligible for exemption from the city occupational tax. Any such organization claiming an exemption shall provide to the city clerk a federal tax exemption letter

10

showing the code section under which an exemption is claimed unless filing for exempt status with the IRS is not required (such as a church). However, with respect to any activity for which an organization otherwise entitled to an exemption under this section shall be liable for federal income tax on unrelated business income or shall be deemed to be a feeder organization under the United States Internal Revenue Code, the exemption from payment of occupational taxes shall not be available.

The County argues that it is not a "business" under Chamblee City Code § 22-2 because its operation of PDK is not "for the purpose of producing income." The County points to OCGA § 6-3-21, which states that "[a]ny lands acquired, owned, leased, controlled, or occupied by counties" for the purpose of, inter alia, owning, leasing, and operating airports and landing strips for the use of aircraft, "shall be and are declared to be acquired, owned, leased, controlled, or occupied for public, governmental, and municipal purposes[.]" See also OCGA § 6-3-20 (a).

In our statutory interpretation, if the statute is "clear and unambiguous, our interpretive task begins and ends with the text itself." *Funvestment Group v. Crittenden*, __ Ga. ___ at (3) (a) (Case No. S22G1247, decided Sept. 19, 2023) (citation and punctuation omitted). The Chamblee City Code defines "business", which is subject to occupancy taxes, as an entity acting "for the purposes of raising

11

revenue or producing income." Chamblee City Code § 22-2 (b). The plain language of OCGA § 6-3-20 (a), states that the County controls PDK for public, governmental, and municipal purposes. See OCGA §§ 6-3-20 (a), 6-3-21. Thereby, pursuant to Chamblee City Code § 22-2, the County is not subject to occupancy taxes at PDK, as the County is not a business.

4. The County argues that the trial court erred by "allowing Chamblee to proceed on its derivative claim for attorney fees." However, the trial court expressly "reserve[d] ruling" on Chamblee's claim for attorney fees. As such, there is nothing for this Court to review. See *U-Haul Co. of Arizona v. Rutland*, 348 Ga. App. 738, 751 (2) (b) n. 10 (824 SE2d 644) (2019) ("Where there is no final ruling upon an issue by the trial court, there is nothing for the appellate court to pass upon, for this court is a court for the correction of errors made in the trial court.") (citation and punctuation omitted).

*Judgment reversed. Miller, P. J., and Hodges, J., concur.*